IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| **MISTIE CLARK and TARA BROWN,**  Plaintiff,  vs.  **PONY TAIL, INC., d/b/a Onyx,**  Defendants. | Civil Action No. 1:16-cv-01396-WBH |

### AMENDED COMPLAINT

Plaintiffs Mistie Clark and Tara Brown, through the undersigned counsel and pursuant to Fed. R. Civ. P. 7 and 15(a)(1)(A), bring this Amended Complaint against Defendant Pony Tail, Inc. d/b/a Onyx, and show the Court as follows:

### Introduction

1.

In this FLSA minimum wage action, Plaintiffs Clark and Brown allege that Defendant Pony Tail, Inc.—her employer—failed to pay them any wages whatsoever and required them to pay out-of-pocket for the privilege of working.

2.

A related case, *Carter v. Pony Tail, Inc.*, Case No. 1:14-cv-02812-WBH (N.D. Ga. 2014), currently is pending before the Court.

## Jurisdiction and Venue

3.

This Court has subject matter jurisdiction over the present action under Article III, § 2 of the United States Constitution, and the Fair Labor Standards Act, ("FLSA") §16(b), 29 U.S.C. § 216(b), 28 U. S.C § 1331, because this case arises under the FLSA, a federal statute that affects interstate commerce.

4.

Venue properly lies in the Northern District of Georgia under 28 U.S.C. § 1391 because a substantial portion of the events giving rise to the claims herein arose in this judicial district.

## The Parties

5.

Clark resides in Fulton County, Georgia.

6.

Brown resides in Fulton County, Georgia.

7.

Pony Tail is a corporation organized under the laws of Georgia.

8.

Pony Tail has previously been served with process in this Action.

9.

Pony Tail is subject to the personal jurisdiction of this Court.

**Factual Allegations**

10.

Clark worked as an exotic dancer at Onyx (hereinafter "the Club") in Atlanta, Georgia from approximately March 2012 through April 2014 (the Relevant Time Period).

11.

Brown worked as an exotic dancer at Onyx (hereinafter "the Club") in Atlanta, Georgia from approximately November 22, 2013 through the spring of 2014.

12.

Defendant Pony Tail owns and operates the Club.

13.

The Club is an Atlanta nightclub catering to and marketing itself to upscale, urban, and hip-hop clientele, and featuring nude female dancers.

14.

At all times material hereto, the Club was an "enterprise engaged in commerce or in the production of goods for commerce" as defined in the FLSA, § 6(a), 29 U.S.C. § 206 (a).

15.

At all times material hereto, the Club was an enterprise engaging in interstate commerce by having multiple employees regularly selling alcoholic beverages produced and shipped from outside of the State of Georgia, regularly serving foods produced and shipped from outside of the State of Georgia, and having multiple employees regularly processing out-of-state credit card sales in the furtherance of its business.

16.

At all times material hereto, Pony Tail had an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated) within the meaning of 29 U.S.C. § 203(s)(1)(A).

17.

At all times material hereto, Pony Tail had two or more "employees engaged in commerce" as defined by 29 U.S.C. § 203(s)(1)(A).

18.

At all times material hereto, Pony Tail had two or more "employees handling, selling or otherwise working on goods or materials that have been moved in or produced for commerce by any person." as defined in 29 U.S.C. § 203(s)(1)(A).

19.

At all times material hereto, Pony Tail house moms and managers had the authority to require dancers to change their attire prior to being permitted to work.

20.

At all times material hereto, Pony Tail directly and indirectly controlled Plaintiff's work schedule.

21.

At all times material hereto, Pony Tail house moms and managers had the authority to require dancers to change their hairstyle prior to being permitted to work.

22.

At all times material hereto, Pony Tail house moms and managers had the authority to require dancers to change their makeup prior to being permitted to work

23.

At all times material hereto, Pony Tail managers had the authority to suspend and discipline dancers.

24.

At all times material hereto, Pony Tail managers supervised dancers on a day-today basis.

25.

At all times material hereto, Pony Tail paid all costs associated with advertising marketing, and promoting the Club.

26.

At all times material hereto, Pony Tail required Club customers to pay a "door fee" to enter the business and thus had ultimate authority as to which individuals were allowed to enter the Club as customers.

27.

At all times material hereto, Pony Tail managers and house moms assigned dancers to specific shifts (e.g., day and night shift) based upon their seniority, appearance, and skill.

28.

At all times material hereto, Pony Tail managers and house moms had the discretion not to permit a dancer to perform if she arrived to a scheduled shift after a certain time

29.

At all times material hereto, Pony Tail has required dancers to pay monetary fees or fines for leaving a shift earlier than a specified time.

30.

At all times material hereto, Pony Tail had the authority to require dancers to pay a fine for not working a scheduled shift without calling ahead.

31.

At all times material hereto, the Club's DJ's have given dancers instructions to remove clothing while on stage.

32.

At all times material hereto, the Club's DJ's called dancers to dance on stage on a set rotation established by the dancers' time of arrival.

33.

At all times material hereto, Pony Tail has enforced a mandatory check-out process for the Club's dancers.

34.

At all times material hereto, Pony Tail generally distributed written rules of conduct to dancers upon engaging them to work at the Club.

35.

At all times material hereto, the list of rules Pony Tail distributed to dancers upon engaging them to work at the Club was substantially similar to the list attached hereto as Exhibit A.

36.

At all times material hereto, Pony Tail required new dancers to sign the rule list and sign an acknowledgment form stating that they had received the rule list.

37.

At all times material hereto, the duties of Club management included ensuring that dancers complied with Club rules and policies.

38.

At all times material hereto, Pony Tail required newly engaged dancers to sign a consent to random drug tests.

39.

At all times material hereto, Pony Tail provided all stages used for dancer performances at the Club.

40.

At all times material hereto, Pony Tail provided all poles used for dancer performances at the Club.

41.

At all times material hereto, Pony Tail was responsible for day-to-day purchases of liquor for sale at the Club.

42.

At all times material hereto, Pony Tail did not require the Club's dancers to have prior experience as dancers or any formal training.

43.

At all times material hereto, when an individual wanted to work as a dancer at the Club, a house mom and manager generally performed a "body check" to determine if the individual's body was suitable for performing at the Club.

44.

At all times material hereto, the general criteria used for making dancer hiring decisions included appearance, ability to dance, communication skills, costumes, weight, hair, demeanor, nails, cleanliness, perceived sexiness, and comfort being nude.

45.

At all times material hereto, the Club's house moms asked dancers to sign up for shifts during the week preceding the week scheduled.

46.

At all times material hereto, dancers' schedules were posted in the dancers' dressing room at the Club.

47.

At all times material hereto, Pony Tail requested that Club dancers work at least four shifts per week.

48.

At all times material hereto, on nights that there were many customers and few dancers at the Club, management would call in additional dancers.

49.

At all times material hereto, Pony Tail advertised its business using pictures of scantily clad women.

50.

At all times material hereto, the presence of nude dancers was integral to the Club's business success.

51.

At all times material hereto, Plaintiffs did not have their own own business entities related to their dance work.

52.

At all times material hereto, Plaintiffs did not independently advertise their dance services.

53.

At all times material hereto, Plaintiffs were "employees" as that term is used in the FLSA, rather than independent contractors, as a matter of economic reality.

54.

At all times material hereto, Pony Tail was Plaintiffs' "employer" as defined in FLSA § 3(d), 29 U.S.C. § 203(d).

55.

At all times material hereto, Clark was not exempt from the minimum wage requirements of the FLSA by reason of any exemption.

56.

At all times material hereto, Pony Tail paid Plaintiffs no wages.

57.

At all times material hereto, Pony Tail required Plaintiffs to pay "fees" to Pony Tail and Pony Tail employees, including but not limited to house moms and DJs.

58.

In approximately 1993, Pony Tail or its predecessor entity was audited by the Wage & Hour Division of the United States Department of Labor ("Wage & Hour").

59.

Wage & Hour determined that the dancers at the Club were employees and not independent contractors, and that the Club must pay them the federally mandated minimum wage.

60.

As part of a settlement with Wage & Hour, Pony Tail agreed to pay dancers at the Club the federally mandated minimum wage.

61.

Since 1993, Pony Tail has flouted its obligations to Plaintiffs and other dancers at the Club, has continued to fraudulently misclassify them as independent contractors, and has willfully have failed to pay them minimum wages.

62.

At all times material hereto, Pony Tail has flouted its obligations to their employees under the Fair Labor Standards Act, not only with respect to dancers,

but with respect to tipped employees (e.g., waitresses and bartenders) and supervisory employees (i.e. house moms) as well.

### Count I – Failure to Pay Minimum Wage

63.

The allegations in all previous paragraphs are incorporated by reference as if fully set out in this paragraph.

64.

At all times material hereto, Plaintiffs were employees covered by the FLSA and entitled to the minimum wage protections set forth in FLSA § 6(a), 29 U.S.C. § 206(a).

65.

At all times material hereto, Pony Tail failed to compensate Plaintiffs at an hourly rate above or equal to the minimum wage.

66.

At all times material hereto, Pony Tail willfully failed to compensate Plaintiffs at an hourly rate above or equal to the minimum wage.

67.

Plaintiffs are entitled to payment of her minimum wages in an amount to be determined at trial, in accordance with FLSA § 16(b), 29 U.S.C. § 216(b).

68.

Pony Tail's requirement that Plaintiffs pay fees and fines to Pony Tail and its managers, house moms, and DJs violated the "free and clear" requirement of 29 CFR 531.35.

69.

Plaintiffs are entitled to receive all unpaid minimum wages from Pony Tail for the hours that they worked.

70.

Plaintiffs are entitled to recover from Pony Tail all fees and fines that it required them to pay in order to work at the Club.

71.

As a result of Pony Tail's willful underpayment of minimum wages as alleged above, Plaintiffs are entitled to liquidated damages in accordance with FLSA § 16(b), 29 U.S.C. § 216(b).

72.

As a result of its underpayment of minimum wages as alleged above, Pony Tail is liable to Plaintiffs for their litigation costs, including their reasonable attorney's fees in accordance with FLSA § 16(b); 29 U.S.C. § 216(b).

WHEREFORE, Plaintiffs request that this Court:

   a. Take jurisdiction of this matter;

   b. Grant a trial by jury as to all matters properly triable to a jury;

   c. Issue an Order holding Defendant to be an "employer" as that term is defined under the FLSA;

   d. Issue a judgment declaring that Plaintiffs were covered by the minimum wage provisions of the FLSA and that Defendant has failed to comply with the requirements of the FLSA;

   e. Award Plaintiffs an amount to be determined at trial against Defendant in unpaid minimum wages due under the FLSA;

   f. Award Plaintiffs liquidated damages in the same amount as her unpaid minimum wages;

   g. Award Plaintiffs prejudgment interest on all amounts owed;

   h. Award Plaintiffs nominal damages;

   i. Award Plaintiffs their reasonable attorney's fees and costs of litigation;

   j. Award any and such other relief this Court deems just, equitable and proper.

This 13th day of May 2016.

                                            Respectfully submitted,

                                            **DELONG, CALDWELL, BRIDGERS,**
                                            **FITZPATRICK & BENJAMIN, LLC**

                                            */s/ Matthew W. Herrington*

3100 Centennial Tower            Mitchell D. Benjamin
101 Marietta Street                Ga. Bar No. 049888
Atlanta, Georgia 30303           Matthew W. Herrington
(404) 979-3150                    Ga. Bar No. 275411
(404) 979-3170 (f)
benjamin@dcbflegal.com         Counsel for Plaintiffs
matthew.herrington@dcbflegal.com

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| **MISTIE CLARK and TARA BROWN,**<br><br>Plaintiff,<br><br>vs.<br><br>**PONY TAIL, INC., d/b/a Onyx,**<br><br>Defendants. | Civil Action No. 1:16-cv-01396-WBH |

## CERTIFICATE OF SERVICE

I hereby certify that on this day I served the foregoing document on Defendant Pony Tail, Inc. by sending a copy by First Class U.S. Mail, postage prepaid, addressed to:

> Pony Tail, Inc.
> c/o Dennis Williams, Registered Agent
> 2555 Chantilly Drive
> Atlanta, GA 30324

Dated: May 13, 2016.

>                */s/ Matthew W. Herrington*
> Matthew W. Herrington
> Georgia Bar No. 275411